# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6068 | **DATE** | 5/3/2002 |
| **CASE TITLE** | Yager vs. ESA 0753 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendants' motions for summary judgment (17-1,19-1,19-2), except with respect to Yager's alternative theory of an alleged contractual obligation to remove naturally forming ice, as to which we grant summary judgment for both defendants. The case is set for trial on 8/12/02 at 9:45 a.m. The pretrial order is to be filed by July 1, 2002. The pretrial conference is set for 8/1/02 at 4:00 p.m. A status hearing is set for 5/16/02 at 9:30 a.m. to discuss the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 07 2002 | |
| | Notified counsel by telephone. | | date docketed | 25 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 MAY -5 PM 5:57 | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| G. MENNEN WILLIAM YAGER )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ESA 0753, INC., d/b/a CROSSLAND )<br>ECONOMY STUDIOS, and MITCH )<br>MANEVAL, d/b/a MITCH'S GREEN )<br>THUMB LANDSCAPING CORP., )<br>)<br>Defendants. ) | Case No. 00 C 6068<br><br>DOCKETED<br>MAY 0 7 2002 |

## MEMORANDUM OPINION AND ORDER

G. Mennen William Yager has sued ESA 0753, Inc., the owner of a hotel, and Mitch's Green Thumb Landscaping Corp. ("the Landscapers") for damages arising from a slip-and-fall accident at ESA's hotel. Yager alleges that he was ascending a ramp leading to ESA's hotel entrance when he fell on a patch of ice and was injured. Yager claims defendants are liable for his injuries based on negligence and breach of contract. This Court has jurisdiction under 28 U.S.C. §1332. Both defendants have moved for summary judgment.

Landowner liability for injuries related to ice accumulations arises when a defect in construction design creates an "unnatural accumulation" of ice, when the owner voluntarily undertakes to remove snow and negligently performs the undertaking by creating an unnatural accumulation of ice, or when the owner assumes a contractual duty to remove natural ice accumulations and fails to remove them. *Graf v. St. Luke's Evangelical Lutheran Church*, 253 Ill. App. 3d 588, 592, 625 N.E.2d 851, 855 (1993); *Eichler v. Plitt Theatres, Inc.*, 167 Ill. App. 3d 685, 690-92, 521 N.E.2d 1196, 1200-01 (1988). A snow-removal contractor can be held

liable for such injuries when it negligently removes snow by creating an unnatural accumulation of ice or when it contracts to remove naturally forming ice and fails to remove it. *Eichler*, 167 Ill. App. 3d at 692, 521 N.E.2d at 1201; *Crane v. Triangle Plaza Inc.*, 228 Ill. App. 3d 325, 330, 591 N.E.2d 936, 940 (1992). Yager has provided no evidence from which a jury could conclude that either ESA or the Landscapers assumed a contractual duty to remove naturally forming ice. However, Yager has provided evidence from which a jury could find both defendants liable on a theory of negligence. Accordingly, this case will proceed to trial.

## Facts

ESA owns a hotel in Waukegan known as Crossland Economy Studios. The hotel has an exterior ramp running from the parking lot to the front desk entrance area. It also has exterior walkways on the ground level and on the balconies above ground level. ESA contracted with the Landscapers to provide for shoveling and plowing services for the parking lot and the hotel walkways. The week before Yager slipped, snowfall occurred on three occasions, which led the Landscapers to shovel those areas.

Around 8 a.m. on January 8, 1999, Yager's coworker, Doug Welle, picked up Yager outside his hotel room to drive him to work. Welle drove Yager to the front area of the hotel and parked adjacent to the ramp, so that Yager could get out and pay his bill. Three or four steps into his ascent up the ramp, Yager slipped and fell. The ramp was covered with fresh snow, but Yager states that, upon impact, the snow was brushed away and he saw ice. Welle, who witnessed Yager's fall, states that Yager had no problems walking until he reached about midway up the ramp. Yager claims that he suffered injuries as a result of the fall.

Yager claims that the ice on the ramp came from melting water that drained off the hotel balcony above the ramp. He has offered an architect's affidavit and report, concluding that the

hotel balconies are designed to drain off the edges and that the ramp is on an incline. Yager has provided evidence indicating that after the Landscapers shoveled the balcony walkways, they typically applied salt. He claims this caused the snow to melt and drain onto the ramp below. Yager contends that the ramp incline caused the runoff to descend the ramp and refreeze in the location where he slipped. However, he does not claim that the slope of the ramp was excessive or defective. *See, e.g., Wells v. Great Atlantic & Pacific Tea Co.*, 171 Ill. App. 3d 1012, 1015-17, 525 N.E.2d 1127, 1129-30 (1988).

## Analysis

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the evidence in the light most favorable to Yager, the non-moving party, and draws reasonable inferences in Yager's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). To avoid summary judgment, Yager, who bears the burden of proof, "must affirmatively set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

To avoid summary judgment on his negligence claim against ESA, Yager must offer evidence from which a jury could find the existence of duty, breach of that duty, and an injury proximately caused by the breach. *Graf*, 253 Ill. App.3d at 591, 625 N.E.2d at 854. A landowner has a duty to prevent or remove "unnatural accumulations" of ice, namely those produced in an unnatural way or by the defendant's use of the premises. *Id.* at 592, 625 N.E.2d

3

at 854. Improper building maintenance or a defect in construction can create an unnatural accumulation of ice or snow. *Turner v. Cosmopolitan National Bank*, 180 Ill. App. 3d 1022, 1031, 536 N.E.2d 806, 812 (1989) (broken door leading to apartment building repeatedly blew open, resulting in an unnatural accumulation of snow in the building vestibule). In particular, liability attaches "when a landowner maintains a building... in a manner which causes water runoff in an area over which the landowner should know people will walk, and water freezes for a period of time sufficient to give the landowner notice." *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 282, 633 N.E.2d 1307, 1312 (1994) (garage roof leaked water onto area in front of garage door). *See also Lapidus v. Hahn*, 115 Ill. App. 3d 795, 450 N.E.2d 824 (1983) (leaky roof caused water to drip and collect on a platform in front of plaintiff's front door).

Yager provides evidence from which a jury could conclude that the hotel building design caused water to drip from the balconies onto an area where patrons would be expected to walk. Specifically, he offers the affidavit of architect John Tomassi, who explains that the hotel balcony, which runs along the perimeter of the hotel, is smooth and pitched downward so that water drains over the edges to the ground level. The high end of the ramp on which Yager slipped is directly below the balcony. Tomassi explains that because there are no gutters or other water-diverting means, water drains from the balcony directly below, onto the high end of the ramp. Because of its location between the parking lot and the front door, the ramp is prone to pedestrian traffic.

ESA contends that even if the balconies are designed to drain in this manner, Yager has failed to provide evidence that this design feature led to the accumulation of ice that he claims caused his fall. ESA claims that Yager cannot show any balcony drainage because the temperature never rose above 22 degrees Fahrenheit during the week prior to his slip and thus

4

the snow could not have melted. ESA also argues that even if drainage from the balcony occurred, Yager did not fall on the portion of the ramp which is directly below the balcony but rather fell in the mid-section of the ramp, about ten to twelve feet away, and thus could not have slipped on ice that originated from the balcony. ESA is correct in that a plaintiff must offer evidence linking the defendant's conduct, as the source of the "unnatural accumulation," to the ice which caused the plaintiff's slip. *Williams v. Stanley Machining & Tool Corp.*, No. 98 C 402, 1999 WL 756164, at *3-*4 (N.D. Ill. Sept. 13, 1999); *Zide v. Jewel Tea Co.*, 39 Ill. App. 2d 217, 224-26, 188 N.E.2d 383, 386-87 (1963). Thus to survive summary judgment, Yager must provide evidence from which a jury could find not only that the building was designed to drain water from the balcony, but also that draining in fact occurred and that it led to the particular ice patch that caused his slip.

Yager provides evidence indicating that there was a substantial snowfall the week prior to his fall and that the hotel balconies were shoveled and salted on at least three different occasions during that time. ESA denies that any salting occurred during the period prior to Yager's fall, based on invoices which do not appear to show that salt was purchased that week and testimony by Landscapers personnel that they salted only when the walks were "wet" or "bad." This is not sufficient to entitle ESA to summary judgment. First of all, the Landscapers could have used salt that they already had. Second, Estanis Carrasco, the Landscapers employee who (according to the company's owner) determined when to spread salt, described the snow removal regime at ESA as one that entails shoveling and salting of all the balconies, and he testified that he "almost always" applied salt after shoveling. And even if his practice was to salt only when the walks were "wet" or "bad," a jury reasonably could find that Carrasco would have considered the walkways "wet" or "bad" during the week in question. Viewing the evidence in

5

Yager's favor, as we must, the Court concludes that a jury reasonably could find that the Landscapers applied salt during the week prior to Yager's fall, which in turn melted the snow on the balconies and produced water for draining onto the ramp below. *See Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1016, 630 N.E.2d 934, 938-39 (1994).

Though Yager fell in the mid-section of the ramp (which was not directly below the balcony's edge), an incline can connect the water source to the ice in question. *Williams*, 1999 WL 756164, at *4. In *Williams*, the accumulation of ice on which plaintiff slipped was adjacent to an inclined surface. *Id.* at *3. The court denied summary judgment, finding that a jury could conclude that the melting snow, located adjacent to an inclined surface, descended the incline and refroze in the location where plaintiff slipped. *Id.* at *9. Similarly, in *Webb v. Morgan*, 176 Ill. App. 3d 378, 531 N.E.2d 36 (1988), the court denied summary judgment because a reasonable jury could conclude that the water traversed a parking lot via an incline to the spot where plaintiff slipped and froze there, causing an unnatural accumulation of ice. *Id.* at 383, 531 N.E.2d at 39. Yager's architect states that the ramp outside the hotel entrance "pitches downward to the south toward the parking lot," creating the possibility of "surface run-off from north to south that can cause ice buildup." Based on this testimony and the laws of gravity, a jury could conclude that water dripping from the balcony flowed down the ramp to the place where Yager slipped and froze in that spot. *See Williams*, 1999 WL 756164, at *3-*4. Finally, ESA has provided the Court with no evidence that gives us a basis to say that the temperature was so cold that water dripping from the balcony would have frozen *immediately*, thus precluding any flow on the ground-level ramp. For these reasons, we conclude that a jury

reasonably could find that the ice causing Yager's slip originated from the balconies. ESA is not entitled to summary judgment.[1]

We might add, however, that we have no basis to determine the likelihood that the scenario posited by Yager actually occurred. Among other things, it is unclear whether any water produced by residual snow that melted on the balcony could have dripped onto the ramp in quantities sufficient to create a patch of ice in the area in which Yager slipped. But because neither party discusses this issue, we leave it for the jury's determination at trial.

Yager's claim against the Landscapers, and an alternative claim against ESA, is that each voluntarily undertook to remove snow and ice and that their breach of this duty caused Yager's injuries. The fact that ESA undertook to remove snow and contracted with the Landscapers to perform this service, however, did not impose upon either of them an obligation to remove naturally occurring accumulations of ice. *Eichler,* 167 Ill. App. 3d at 692, 521 N.E.2d at 1201. Yager contends that the contract between ESA and the Landscapers included ice removal, based on evidence that the Landscapers agreed to spread salt on the parking lot if more than one inch of snow fell. But even if there was such an undertaking, it would have obligated the Landscapers only to spread salt, not to remove natural accumulations of ice, and the Court cannot expand this obligation in the manner argued by Yager. *American States Insurance Co. v. A.J. Maggio Co.,* 229 Ill. App. 3d 422, 426, 593 N.E.2d 1083, 1096 (1992).

By virtue of their agreement, ESA and the Landscapers did incur a duty of reasonable care, that is, to avoid creating an unnatural accumulation of ice or aggravating a natural accumulation. *See, e.g., Madeo v. Tri-Land Properties, Inc.,* 239 Ill. App. 3d 288, 290, 606

---

[1] In its reply brief, ESA appears to argue that it lacked notice of the alleged condition that caused Yager's fall. We express no opinion on this issue because ESA failed to raise it in its motion for summary judgment or its opening brief.

7

N.E.2d 701, 702 (1992). *See also McBride v. The Taxman Corp.*, 327 Ill. App. 3d 992, 765 N.E.2d 51, 55 (2002). (Arguably ESA's liability should be limited to negligent hiring of a snow removal contractor, *see Pippin v. Chicago Housing Authority,* 78 Ill. 2d 209-10, 399 N.E.2d 596, 599 (1979), but both parties have argued the matter as if ESA's and the Landscaper's potential liability in this regard were coextensive, and we shall proceed on that basis as well, particularly because there is support for it in Illinois law. *See Madeo,* 239 Ill. App. 3d at 290, 606 N.E.2d at 702; *Wells,* 171 Ill. App. 3d at 1019, 525 N.E.2d at 1131.) For purposes of the present motion at least, this adds nothing of consequence to Yager's claim against ESA, whose motion for summary judgment we have already denied. With respect to the Landscapers, as we have described, Yager has offered evidence from which a jury could conclude that they created a water runoff on the balcony which caused an unnatural accumulation on the ramp where he slipped. Because the jury reasonably could conclude that the Landscapers created this condition, the need to show the Landscapers' knowledge is obviated. *Bloom v. Bistro Restaurant Limited Partnership*, 304 Ill. App. 3d 707, 711-12, 710 N.E.2d 121, 124 (1999) ("to survive summary judgment, [plaintiff] must affirmatively show that the accumulation was somehow created by defendants *or* that the property owner had ... knowledge of the condition" (emphasis added).); *Webb,* 176 Ill. App. 3d at 381, 531 N.E.2d at 39 (based on evidence that plowing by defendant's agents caused an unnatural accumulation, a jury could determine that the agent was aware of the condition). For these reasons, the Landscapers are not entitled to summary judgment on Yager's negligence claim.

Yager's final, alternative claim against both the Landscapers and ESA is premised on their alleged contractual obligation to remove naturally forming ice. A snow removal contractor may be held liable for injuries sustained by naturally forming ice where the party promises to

remove ice and fails to remove it. *Eichler*, 167 Ill. App. 3d at 692, 521 N.E.2d at 1201. But as we have found, the agreement between ESA and the Landscapers did not include the removal of naturally forming ice. Thus Yager's alternative contract-based claim cannot proceed.

**Conclusion**

For the reasons stated above, the Court denies defendants' motions for summary judgment [docket items 17-1, 19-1, 19-2], except with respect to Yager's alternative theory of an alleged contractual obligation to remove naturally forming ice, as to which we grant summary judgment for both defendants. The case is set for trial on August 12, 2002 at 9:45 a.m. The final pretrial order is to be filed by July 1, 2002. The final pretrial conference is set for August 1, 2002 at 4:00 p.m. A status hearing is set for May 16, 2002 at 9:30 a.m. to discuss the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date: May 3, 2002